IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY E. RAASCH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. |
| HEY & ASSOCIATES, INC. and GARY C. SCHAEFER, | ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT**

Plaintiff Gary E. Raasch, through his attorneys, Robert H. Muriel and Michele D. Miladinov, and complaining of the Defendants Hey & Associates, Inc. and Gary C. Schaefer, states as follows:

**INTRODUCTION**

1. This is a claim for relief under the laws of the State of Illinois, specifically the Illinois Business Corporation Act of 1983 ("Business Corporation Act") (805 ILCS 5/1.01 et seq.), and the common law, seeking damages and equitable relief against Defendants Hey & Associates, Inc. ("Hey") and its majority shareholder and sole director Gary C. Schaefer for their actions which are oppressive and a breach of fiduciary duty with respect to Plaintiff Gary E. Raasch, who is a minority shareholder of Hey.

**PARTIES**

2. Plaintiff Gary E. Raasch resides in Brookfield, Wisconsin and is a citizen of Wisconsin. Plaintiff is a licensed professional engineer in Wisconsin and Illinois, and was employed at Hey from August 29, 1997 through November 14, 2008. Plaintiff

became a shareholder of Hey in 1997. He was a Senior Vice President prior to his involuntary termination in November 2008. He presently remains a Hey shareholder.

3. Defendant Hey & Associates, Inc. is an Illinois corporation with its principal place of business in Volo, Illinois, which is in Lake County. Hey was founded in 1976 and offers expertise in solving water resource-related problems, focusing on watershed and stormwater planning and engineering, aquatic ecosystem restoration, and wetland delineation and management. In addition to its main office in Volo, Illinois, Hey also maintains offices in Chicago and Aurora, Illinois, and Brookfield, Wisconsin.

4. Defendant Gary C. Schaefer is an individual who resides in McHenry, Illinois. Schaefer is a citizen of Illinois. At all relevant times, Schaefer has been Hey's president, majority shareholder, and sole member of its board of directors. He is a licensed professional engineer in Illinois and Wisconsin.

## VENUE AND JURISDICTION

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between Citizens of different States. 28 U.S.C. 1332(a)(1). Plaintiff is citizen of the State of Wisconsin, Defendant Gary C. Schaefer is a citizen of the State of Illinois and Defendant Hey & Associates, Inc. is incorporated under the laws of the State of Illinois with its principal place of business in the state of Illinois.

6. This Court has *in personam* jurisdiction over the Defendants, as Defendant Gary C. Schaefer is a citizen of Illinois and Hey & Associates, Inc. is an entity incorporated in and with its principal place of business in Illinois.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c) because Defendant Hey resides in this district (and all Defendants reside in the State of Illinois) and because a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District of Illinois, Eastern Division.

## FACTUAL ALLEGATIONS

### Purchase of Hey & Associates, Inc.

8. Hey & Associates, Inc. was founded in 1976 in response to the growing need for comprehensive water resource solutions.

9. In 1997, Schaefer, Plaintiff, Neal O'Reilly, and Vince Mosca decided to form an ownership group for the purpose of buying Hey & Associates, Inc. from the founder, Donald L. Hey.

10. Defendant Schaefer, on behalf of this investment group, negotiated the purchase of Hey & Associates, Inc. for $1,000,000. The acquisition was financed with loans from Mr. Hey, and the loans were repaid over time through the earnings of Hey & Associates, Inc.

11. Subsequent to the 1997 purchase, the 100 shares of Hey & Associates, Inc. were divided as follows: Schaefer: 67 shares; Plaintiff: 14 shares; Neal O'Reilly: 14 shares; and Vincent Mosca: 5 shares.

12. Based upon his 14% interest in Hey, Plaintiff's pro rata share of the purchase price was $140,000. As stated above, Plaintiff's $140,000 purchase price was financed by Mr. Hey and ultimately repaid by the earnings of the corporation.

13. In addition to the initial purchase price to Mr. Hey, each shareholder loaned Hey & Associates, Inc. $400 per share for working capital. These loans were repaid around 2004.

14. Since the 1997 purchase, Schaefer has served as President of Hey and has been the sole member of its board of directors. These facts, coupled with Schaefer's 67% interest in Hey, give Schaefer complete control over the management and affairs of Hey.

15. Plaintiff began his employment with Hey on August 29, 1997, and established a Brookfield, Wisconsin office for the corporation.

16. On October 30, 1997, Neal O'Reilly and three other staff members joined Plaintiff in the Wisconsin office.

17. At some time prior to April 21, 1999, O'Reilly decreased his interest in the corporation to five shares, and Vincent Mosca's ownership interest was increased to 14 shares. On or about September 1, 2000, Tom Polzin acquired two shares in Hey.

18. The current shareholders of Hey are Schaefer, Mosca, Polzin, O'Reilly, and Plaintiff. Hey is and at all times relevant to this action has been a non-public corporation within the meaning of section 12.56(a) of the Business Corporation Act (805 ILCS 5/12.56).

**Schaefer's announced intention to retire & rejection of offers to purchase Hey**

19. Schaefer referred to the other Hey shareholders as his "partners." During the time period 1997 through 2003, partner (shareholder) meetings were held approximately quarterly.

20. In approximately 2005, Schaefer indicated that he wished to begin planning for retirement and invited the other shareholders to purchase his shares in the

4

corporation. Plaintiff indicated that he was not interested in purchasing additional shares in the corporation. Schaefer rejected an informal offer made by Vince Mosca, Neal O'Reilly, and Tom Polzin.

21. Several outside firms also expressed interest in purchasing Schaefer's shares in the corporation, but Schaefer rejected all such offers. In particular, at an August 2006 shareholders meeting, Schaefer reported that an engineering firm had offered $2,450,000 in cash for all shares of Hey. (Plaintiff's 14% share would have been $343,000.00.) Schaefer chose not to pursue or rejected all such offers.

22. The frequency of the shareholder meetings began to diminish around the time that Plaintiff declined Schaefer's offer to buy Schaefer's shares. There were no shareholder or "partner" meetings between February 2006 and September 2008. During that time, the collegial relationship between the shareholders diminished greatly and was replaced by Schaefer's autocratic decision-making style and less coordinated management by the shareholders.

23. Schaefer's focus shifted from growing the firm to ownership succession.

**Defendants' termination of Plaintiff**

24. In early June 2008, Plaintiff called Schaefer to discuss difficulties working with Neal O'Reilly, the other shareholder in Wisconsin. Schaefer suggested a meeting to clear up differences. A few days later, Schaefer, O'Reilly, and Plaintiff held a meeting. Instead of discussing the working relationships, Schaefer expressed concern over the lack of work in Hey's Wisconsin office and indicated doubt over the Wisconsin office's ability to generate more work.

25. On June 24, 2008, Plaintiff telephoned Schaefer to request a decision regarding the replacement of a vehicle for the Wisconsin office. Schaefer, in a reactionary response, suggested that Plaintiff turn in his shares of the corporation in exchange for the Wisconsin office so that they would no longer need to "put up with" each other.

26. Schaefer made a similar proposal in a letter dated July 10, 2008. Plaintiff declined the offer but offered suggestions to grow the firm.

27. On September 22, 2008, Schaefer issued a formal notice of special meeting of the shareholders to discuss the future of the Wisconsin office. That meeting took place on September 24, 2008, at the office of Hey's corporate lawyer. At the meeting, the shareholders discussed the financial situation of the Wisconsin office and agreed to reconvene during the week of October 6, 2008 to finalize plans for the Wisconsin office. The meeting never took place.

28. Instead, Schaefer sent to Plaintiff a letter dated October 10, 2008, which terminated Plaintiff's employment. The letter stated that Schaefer's investigation "led me to the inevitable conclusion that the Wisconsin office will be closed as soon as possible but no later than December 31, 2008."

29. Plaintiff was shocked by his immediate termination due to prior conversations he had with Schaefer and the other shareholders wherein it was made clear that if the corporation ever became financially unstable, staff would be terminated before any shareholders lost their jobs.

30. Alternatives to closure of the Wisconsin office were not adequately considered before Schaefer's decision to terminate Plaintiff's employment. More

6

significantly, however, the reasons for Plaintiff's termination were highly suspect given that 2008 revenues of the Wisconsin office exceeded 2007 revenues, which are significant, given the economic recession.

31.     In hindsight, the reasons stated in the letter dated October 10, 2008 are also highly questionable because the Wisconsin office remains open as of the date of the filing of this lawsuit.

### Negotiations subsequent to the Schaefer letter of termination relating to the purchase of Plaintiff's shares of Hey

32.     Subsequent to Schaefer's letter of termination, Plaintiff made clear to Schaefer his desire that Hey purchase Plaintiff's shares in the corporation.

33.     Schaefer responded with a proposed severance agreement that was silent on the issue of Plaintiff's shares being purchased by the corporation or other shareholders. Rather, Schaefer focused on his desire to have Plaintiff complete certain projects for Hey clients.

34.     Schaefer sent to Plaintiff an email on October 31, 2008, which stated in part: "After we have successfully arranged the completion and transfer of projects next week we will discuss the potential purchase of your shares."

35.     Plaintiff relied on Schaefer's statement that he would in good faith consider the purchase of Plaintiff's shares and successfully completed projects for Hey clients.

36.     Plaintiff notified Schaefer by letter dated April 30, 2009, that pursuant to their agreement, all of the works in progress had been completed or transitioned to Hey and invited Schaefer to address Plaintiff's offer to sell his shares.

7

37. Schaefer responded by letter dated May 12, 2009, that neither Hey nor the Hey shareholders had any interest in purchasing Plaintiff's shares.

38. Subsequent efforts to negotiate a fair price for the purchase of Plaintiff's shares have proven futile.

**Defendants' oppressive conduct relating to Plaintiff's minority interest**

39. Subsequent to Plaintiff's termination, Schaefer warned some Hey clients that Plaintiff needed to observe certain alleged restrictive covenants in the Shareholders Agreement. Schaefer's intention was to restrict Plaintiff's ability to seek consulting engagements.

40. On December 3, 2008, Hey's corporate lawyer similarly sent a similar letter to Plaintiff reminding Plaintiff of certain alleged restrictive covenants that allegedly prohibited Plaintiff from considering a business relationship with Hey customers.

41. On December 8, 2008, Schaefer sent an electronic mail to a Hey client, the Wisconsin Department of Justice, advising that Plaintiff was bound by a non-competition agreement and that Plaintiff "may have formed or joined a business to compete with Hey. . . ." This was sent after said client terminated its contract with Hey and asked Hey to transfer its files to Plaintiff. Schaefer sent the electronic mail in an effort to unlawfully interfere with Plaintiff's business prospects.

42. In fact, no such restrictive covenants exist in the Shareholders Agreement. Defendants' actions of intimidation forced Plaintiff to have to hire a lawyer to defend himself against the false charges relating to the alleged restrictive covenants.

43. On December 17, 2008, Schaefer and Hey sent letters to Hey clients informing them that Plaintiff was no longer with the firm and that Neal O'Reilly had been named the new manager of the Wisconsin office.

44. Schaefer's conduct in terminating Plaintiff's employment but refusing to purchase his shares was oppressive and substantially defeated Plaintiff's expectations, which were both reasonable under the circumstances and central to Plaintiff's decision to join Hey.

45. Since Plaintiff's termination, the corporation has likely paid bonuses to employee shareholders, but has not paid any dividends to the shareholders.

46. Moreover, Plaintiff did not receive a profit sharing deposit to his corporate 401(k) account for the calendar year 2008. Hey's 401(k) plan had been modified in 2007 to guarantee a profit sharing contribution of 7.5% regardless of the participant's employment on the last day of the plan year so long as the defined benefit plan exists.

47. The conduct of Schaefer and the other shareholders in control of Hey in terminating Plaintiff's employment, in failing to purchase his shares, in failing to pay dividends to the shareholders, and in failing to make a profit sharing deposit to Plaintiff's 401(k) account for the 2008 calendar year was oppressive and a breach of the fiduciary duty owed to Plaintiff, a shareholder of Hey, and was in violation of the Business Corporation Act.

48. Schaefer's conduct violated the Business Corporation Act and was illegal, oppressive, and in derogation of his fiduciary duties to Plaintiff.

49. Plaintiff has been irreparably injured by the actions of Defendants.

9

## COUNT I
## OPPRESSION OF MINORITY SHAREHOLDER
## AGAINST HEY AND SCHAEFER

50. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 49 above as though fully set forth herein.

51. Schaefer, as the director and controlling shareholder of Hey, acted in a manner oppressive to Plaintiff, a shareholder in Hey, by engaging in the actions set forth above, including but not limited to the following:

> (i) Terminating Plaintiff's employment;
>
> (ii) Attempting to unlawfully restrict Plaintiff's business opportunities after termination from Hey;
>
> (iii) Failing to negotiate in good faith for the purchase of Plaintiff's shares of Hey once he was no longer employed by the corporation;
>
> (iv) Failing to pay dividends to shareholders; and
>
> (v) Failing to make a profit sharing deposit to Plaintiff's corporate 401(k) account for the calendar year 2008.

52. Schaefer's conduct has caused Plaintiff to suffer direct and consequential damages.

53. As a result of Schaefer's willful, malicious and oppressive conduct, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Gary E. Raasch respectfully requests that this Court grant him the following relief:

> (a) enter judgment in his favor and against Defendant Gary C. Schaefer and award Plaintiff all direct and consequential damages Plaintiff has suffered as a result of Defendant's oppression, including punitive damages in an amount to be determined at trial, his costs, reasonable attorney fees, and interest, and for such other monetary relief as this Court may deem appropriate under the circumstances;

(b) the purchase by the corporation or one or more of the shareholders of all of Plaintiff's shares for their fair value and on the terms set forth in section 12.56(e) of the Business Corporation Act (805 ILCS 5/12.56);

(c) an accounting of Hey pursuant to section 12.56(b) of the Business Corporation Act (805 ILCS 5/12.56);

(d) an award of dividends to Plaintiff during the time that he was being oppressed as a minority shareholder;

(e) an award of a profit sharing deposit to Plaintiff's corporate 401(k) account for the calendar year 2008;

(f) in the alternative to the relief requested in paragraph (b) above and consistent with the remedies available in section 12.56(b) of the Business Corporation Act (805 ILCS 5/12.56), the removal of Schaefer as the president and sole director of Hey and the appointment of a provisional director for the purpose of resolving the damages caused by Defendants' actions herein, or the dissolution of Hey; and

(g) all other monetary or equitable relief as the Court may deem just and proper.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## AGAINST GARY SCHAEFER

54. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 49 above as though fully set forth herein.

55. Schaefer, as a shareholder in a closely-held corporation, owed a fiduciary duty to the other shareholders, including Plaintiff.

56. Schaefer breached the fiduciary duty he owed to Plaintiff by, among other things, engaging in the conduct set forth in the allegations above, including paragraph 51, for his own benefit and to the detriment of Plaintiff.

57. Plaintiff has been irreparably injured by Schaefer's actions.

WHEREFORE, Plaintiff Gary E. Raasch respectfully requests that this Court enter judgment in his favor and against Defendant Gary C. Schaefer and award Plaintiff all direct and consequential damages Plaintiff has suffered as a result of Defendant's oppression, including punitive damages in an amount to be determined at trial, his costs, reasonable attorney fees, and interest, and for such other relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiff Gary E. Raasch hereby requests a jury trial on all issues triable by a jury.

Dated: December 3, 2009                     Respectfully submitted,

                                            GARY E. RAASCH

                                            By:  /s/ Robert H. Muriel
                                                 One of his Attorneys

Robert H. Muriel (6216589)
Michele D. Miladinov (6293388)
MURIEL LAW OFFICES, LLC
Three First National Plaza
Suite 5050
Chicago, Illinois 60602
(312) 602-1060